## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK GRAHAM, as Guardian of<br>JOHNATHAN HOLT, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-22-630-SLP |
| NATIONAL UNION FIRE INSURANCE<br>COMPANY, a foreign for-profit company, | ) ) ) | |
| Defendant. | ) ) | |
| COMPSOURCE MUTUAL INS. CO., | ) ) | |
| Intervenor. | ) | |

## <u>O R D E R</u>

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Doc. No. 68] and the Motion for Summary Judgment of Defendant National Union Fire Insurance Company ("NUFIC") [Doc. No. 77]. Both Motions are fully briefed and at issue. *See* Def.'s Resp. [Doc. No. 73]; Pl.'s Reply [Doc. No. 76]; Pl.'s Resp. [Doc. No. 80]; and Def.'s Reply [Doc. No. 82].[1] For the reasons that follow, Plaintiff's Partial Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

## I.    <u>Background</u>

Plaintiff Mark Graham, as guardian of Johnathan Holt, brings this action against Defendant National Union Fire Insurance Company of Pittsburgh, Pa.[2] (NUFIC) for breach of contract and breach of the duty of good faith and fair dealing.  The policy at issue is a commercial automobile policy that includes an Uninsured Motorist (UM) endorsement. The action arises from an incident on December 1, 2017, where Holt, a client of Oklahoma Production Center for the Developmentally Disabled (OPC),[3] was injured while working with an OPC garbage truck.

This matter is now before the Court on the parties' cross-motions for summary judgment.  Plaintiff moves for partial summary judgment on his breach of contract claim, seeking a ruling that Holt is an insured under the UM coverage of the policy.  Defendant NUFIC moves for summary judgment on both the breach of contract and bad faith claims, arguing it is entitled to judgment as a matter of law.

## II.    <u>Governing Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Birch v. Polaris Indus.,*

---

[2] NUFIC notes that it is incorrectly named in the Complaint as National Union Fire Insurance Company.  [Doc. No. 73] at 5.

[3] The parties refer to Defendant National Union Fire Insurance Company of Pittsburgh, Pa. as "NUFIC" and the Oklahoma Production Center for the Developmentally Disabled as "OPC." For purposes of consistency, the Court does the same.

*Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And a fact is only material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

When a court is "presented with cross-motions for summary judgment," it ""must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (quoting *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012)).  "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## III.   Undisputed Material Facts[4]

At the time of the December 1, 2017 incident, Johnathan Holt was an adult with significant developmental disabilities and had resided at OPC for approximately 17 years. In addition to providing residential care, OPC operated vocational programs in which Holt participated, including trash collection services.

---

[4] The Court includes facts that are material, supported by the summary judgment record, and not genuinely disputed.  *See* Fed. R. Civ. P. 56(c).

Further, the parties each raise evidentiary issues.  To the extent Plaintiff argues the Perry and Wilburn declarations should be disregarded because they "violate the *Buzzard* doctrine," the Court finds they are permissible as they do not create post hoc rationalizations and merely reinforce the facts in the record.  *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987).  As to NUFIC's argument that Plaintiff's Exhibits 4, 5, 6, 7 to its Response [Doc. No. 80] are inadmissible on grounds of hearsay and authentication, the Court withholds its ruling on admissibility of this evidence at this time but disregards these exhibits for purposes of this opinion as they do not provide material facts dispositive to any issue.  The Court notes, however, that Exhibit 4 (the Residential Services Contract) was attached to Plaintiff's Partial Motion for Summary Judgment [Doc. No. 68], and NUFIC did not object.

On the day of the incident, Holt was working with another OPC client and their supervisor collecting trash from dumpsters using an OPC garbage truck.  The supervisor backed the truck up to a dumpster, set the truck's emergency brake, and engaged the truck's Power Take-Off (PTO) unit to power the hydraulic equipment that lifts the dumpster.  When the PTO is engaged, power is diverted from the transmission and driveshaft, and the truck is immobile.  Holt then walked to the rear of the truck, connected the truck's cables to the dumpster, and began walking towards the "safe side" of the truck.  Before the supervisor could check the attachment, the other client activated the hydraulics and began lifting the dumpster.  As the supervisor exited the truck to check the dumpster attachment, she saw the dumpster fall and land on Holt's legs, pinning him to the ground until first responders arrived and helped remove the dumpster.  Holt was medi-flighted to a hospital for treatment of numerous severe injuries and underwent months of rehabilitation.

Holt subsequently obtained workers' compensation benefits.  The truck is a covered auto under the commercial auto policy (the "Policy") issued by NUFIC, and OPC is the only named insured.  In 2018, Holt sued OPC for negligence, and NUFIC was notified of the lawsuit.  At that time, general liability coverage was denied to OPC under NUFIC's Policy and another policy owned by OPC based on a coverage analysis provided by outside counsel.  *See* Denial Letter, [Doc. No. 68-10] at 9.  NUFIC did not notify Plaintiff or his attorney of the existence of UM coverage under the Policy during Holt's lawsuit against OPC.  Def.'s Resp. [Doc. No. 73] at 9.

In October 2021, Plaintiff's attorney notified NUFIC that he was pursuing a UM claim on Holt's behalf.[5]  NUFIC assigned the UM claim to Athens Administrators, NUFIC's third-party claims administrator.  NUFIC retained the same outside counsel to provide legal opinions regarding coverage for Holt's UM claim.  [Doc. No. 77-3].  The written legal coverage analysis recommended denial of Holt's UM claim, opining that Holt was not entitled to UM benefits because he was not an insured under the Policy's Oklahoma UM coverage endorsement ("UM Endorsement") by not "occupying" the truck, and his injury was not caused by the truck being used in its "transportation mode" as required by Oklahoma law.  *Id.*  Athens then sent a denial letter to Plaintiff's counsel, citing the reasons in the coverage analysis.  [Doc. No. 77-4].  The letter further stated the workers' compensation benefits Holt received would "offset or eliminate any entitlement" to UM benefits.  *Id.* at 3.

Pertinent to the pending motions, the relevant UM Endorsement language includes:

**A. Coverage**

We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle".  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident".  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

---

[5] NUFIC does not dispute whether the truck qualifies as an "uninsured motor vehicle" under the UM Endorsement.  *See* NUFIC Mot. [Doc. No. 77] at 19, n.11 (explaining the truck is an "'uninsured motor vehicle' as that term is defined in the UM Endorsement because the auto liability coverage was disclaimed.").

* * *

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

* * *

**C. Exclusions**

This insurance does not apply to:

* * *

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

* * *

**F. Additional Definitions**

As used in this endorsement:

* * *

2. "Occupying" means in, upon, getting in, on, out or off.

[Doc. No. 77-7] at 37–40.

Plaintiff then filed this action against NUFIC for breach of contract and breach of the duty of good faith and fair dealing. CompSource Mutual Insurance Company intervened to recover workers' compensation benefits paid on Holt's behalf.

**IV.    Discussion**

**A.  Breach of Contract**

Under Oklahoma law, the general principles of contract law apply to the interpretation of insurance policies. *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla.

2006).[6]  Plaintiff must establish that "a contract existed; the contract required UM coverage benefits to be paid; and Defendant breached the contract, and caused damages, by failing to make the payment." *Hatch v. State Farm Fire & Cas. Co.*, No. CIV-19-471-D, 2020 WL 6163562, at *3 (W.D. Okla. Oct. 21, 2020) (citing *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001)).  The parties do not dispute the Policy constitutes a contract, nor do they dispute any facts establishing contract formation.  Thus, the central dispute is whether Holt was entitled to UM coverage and whether NUFIC breached by determining he was not and failing to pay.

To show entitlement to UM coverage, Plaintiff must prove the following four elements: (1) Holt is an insured under the UM provisions of a policy; (2) the injury to the insured has been caused by an accident; (3) the injury to the insured has arisen out of the "ownership, maintenance or use" of a motor vehicle; and (4) the injured insured is "legally entitled to recover damages from the owner or operator of the uninsured motor vehicle." *Ply v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 81 P.3d 643, 647 (Okla. 2003).  To satisfy the third element, courts apply a two-part test: "(1) whether 'the use of an uninsured motor vehicle is related to its transportation nature,' and (2) whether the injuries alleged are 'connected to that use.'" *Child A., Child B. ex rel. Gaither v. Allstate Ins. Co.*, 323 F. App'x 635, 641 (10th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Sanders*, 803 P.2d 688, 692 (Okla. 1990).  If both prongs are met, "then the use of the vehicle and

---

[6] In an action where subject matter jurisdiction is premised on diversity of citizenship, the substantive law of the forum state governs.  *See, e.g., Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105–06 (10th Cir. 2016).  The parties agree that Oklahoma law governs.

the injury are said to be causally connected, requiring UM coverage." *Id.*

NUFIC argues Plaintiff cannot meet the first and third elements of the claim—that is, Holt is not an "insured" under the Policy and that the truck was not being used in "transportation mode" at the time of the incident. Plaintiff disagrees, arguing that he is a Class 1 insured and that even though he was not touching the vehicle at the time of the incident, he still "occupied" it. Plaintiff further argues that an intermittent stationary period does not wholly negate whether the truck was in "transportation mode."

### 1. *Holt's Status as an Insured*

Plaintiff asserts that NUFIC improperly denied UM coverage on the basis that Holt was not an "insured," arguing there are two reasons that Holt qualifies as an insured under the Policy. First, Plaintiff argues that Holt is a "Class 1" insured under Oklahoma law "due to his status as a resident of OPC." Pl.'s Mot. [Doc. No. 68] at 18. Under Oklahoma law, "for UM purposes, Class 1 insureds are named insureds and resident relatives, and Class 2 insureds are individuals insured in the policy only by reason of their occupancy or permissive use of a covered vehicle." *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054-55 (Okla. 2004) (internal quotations and citation omitted). Plaintiff devotes little analysis to this argument and only cites *Bogdhan* in support. Pl.'s Mot. [Doc. No. 68] at 18. However, *Bogdhan* holds that where, as here, the named insured is a corporation, "no 'family members' qualify as Class 1 insureds." *Id.* at 1055. Like the policy in *Bogdahn*, the UM endorsement at issue here also only refers to "family members" in the context of when the named insured is an individual, rather than a corporation or other organization. [Doc. No. 77-7] at 37. Thus, because OPC is the named insured, *Id.* at 3, there are no

8

resident relatives or family members that could constitute a Class 1 insured.[7]  Holt is not a Class 1 insured.

Second, Plaintiff argues Holt is an insured because he was "occupying" the truck at the time of the incident, as required by the Policy.  Pl.'s Mot. [Doc. No. 68] at 11.  Under the Policy, an "insured" is "[a]nyone 'occupying' a covered auto."  [Doc. No. 77-7] at 37. "'Occupying' means in, upon, getting in, on, out or off."  *Id.*  While the parties agree that Holt was not physically in or touching the truck at the time the dumpster fell on him, Plaintiff argues that because Holt only exited the truck to attach the cables and then stood by the truck with the intention to return when the task was complete, Holt satisfies the definition of "occupying."  *Id.* at 14.  NUFIC disputes this, arguing for a narrow reading of the definition.

Under Oklahoma law, "the determination of whether the policy definition of 'occupying' is satisfied should be left to a case-by-case analysis, depending on the circumstances of the accident, the use of the vehicle, the relevant terms of the coverage at issue, and any underlying public policy considerations." *Wickham v. Equity Fire & Cas. Co.*, 889 P.2d 1258, 1261 (Okla. Civ. App. 1994).  Further, the *Wickham* court found that "a broad interpretation of 'occupying' is consistent with the public policy underpinnings of the uninsured motorist statute" and therefore "decline[d] to adopt any bright-line test to

---

[7] Plaintiff also references Holt's "Contract for Residential Services" with OPC that states OPC will provide Holt with "insurance (personal and property), transportation (gas, insurance and vehicle maintenance)."  [Doc. No. 68-4] at 1.  However, Plaintiff does not cite to any legal authority supporting his position that his payments to OPC somehow transform him into a named insured or one that merits Class 1 status.

determine whether someone occupied a vehicle for purposes of UM coverage." *Id.* (holding the term "occupying" was "broad enough to include a person such as [the plaintiff] who had looked through the trunk for tools, who was performing repairs on the vehicle, and who was situated next to the vehicle, tightening a lug nut on the wheel.").

Plaintiff cites to numerous cases (including *Wickham*) analyzing the definition of "occupying" in a UM context and often, affording a broad interpretation to the term. For example, in *Willard v. Kelley*, 803 P.2d 1124 (Okla. 1990), a police officer was shot immediately after exiting his vehicle, causing him to fall partially onto his car seat. The court analyzed whether these facts satisfied the definition of "occupying" his patrol car within the meaning of his policy's medical payments provision and ultimately held the definition was broad enough to include the plaintiff given that it included "alighting from" and "entering into" the covered vehicle. *Id.*

As another example, Plaintiff cites to a Northern District of Oklahoma opinion that analyzed whether "occupying" would include a tow truck driver who was standing a few feet from his tow truck and actively preparing a disabled car for towing when he was pinned between his truck and the car. *Johnson v. Old Republic Ins. Co.*, No. 10-CV-460-JHP-FHM, 2011 WL 4830118, at *4 (N.D. Okla. Oct. 12, 2011). Analyzing *Willard* and an unpublished opinion in *Keys v. Talavera*[8] (also cited by Plaintiff and attached at Doc. No.

---

[8] *Keys v. Talavera,* DF–98, 806 (Okla. Civ. App. Nov. 22, 2004). Pursuant to Okla. Sup. Ct. R. 1.200(b)(5), unpublished opinions "are deemed to be without value as precedent" and "shall not be construed as precedent by any court or cited in any brief or other material presented to any court, except to support a claim of res judicata, collateral estoppel, or law of the case."

68-20), the *Johnson* court found that the tow truck driver could broadly be considered "upon" or "getting on" the truck at the time of the accident given that, like *Willard*, he was physically *on* the truck after being injured and that he was likely moving towards the tow truck at the moment he perceived the imminent injury.  *Id.*

In *Transcontinental Ins. Co. v. Lemons*, the injured individual had exited the vehicle approximately six to ten seconds before being struck by a coworker.  No. CIV-05-1235-C, 2006 WL 1804559 (W.D. Okla. June 28, 2006).  At the time he exited, he left the passenger door open while the vehicle's engine was running, as he had only intended to retrieve a lunchbox from a truck parked a few feet away and planned to return to the running vehicle. *Id.*  The court found he was "occupying" the vehicle because he had a "much stronger connection to the pickup than *Wickham* did" and because he had only "temporarily left to retrieve his lunch."  *Id.* at *3.

For its part, NUFIC distinguishes these cases, arguing that "in each of them the injured party was either exiting the insured vehicle (*Willard*), physically touching the insured vehicle (*Willard* and *Wickham*) . . . or in the process of re-entering the insured vehicle after a few seconds (*Willard* and *Lemons*)."  Def.'s Resp. [Doc. No. 73] at 19.[9]

---

[9] NUFIC also cites to *Bituminous Cas. Corp. v. Pollard*, No. CIV-10-379-M, 2011 WL 6012608 (W.D. Okla. Dec. 1, 2011), stating the "court held that a jury should determine whether Pollard was 'occupying' the truck for UM purposes."  *Id.*  However, after the ruling cited by NUFIC, the *Pollard* parties submitted their stipulation of facts, and the district court entered summary judgment finding that, at the time of the accident, the plaintiff was not "occupying" the workover rig because the "accident occurred not while he was in, upon, getting in, on, out or off the insured workover rig but while he was standing on the gearbox of the pumpjack."  *Bituminous Cas. Corp. v. Pollard*, No. CIV-10-379-M, 2011 WL 13391950, at *2 (W.D. Okla. Dec. 14, 2011).  On appeal, the Tenth Circuit declined to review and analyze the "occupying" issue because it agreed with the district court's finding that the rig was not in "transportation mode" at the time of the accident. *Bituminous Cas. Corp. v. Pollard*, 508 F. App'x 780, 785 (10th Cir. 2013).

While it is true that Holt was not physically touching the truck at the time of his injury, Oklahoma courts have also staunchly refused to adopt any kind of specific, bright-line test. *Wickham*, 889 P.2d at 1261.

NUFIC also cites to two cases in support of its position, *see* Def.'s Resp. [Doc. No. 68] at 16–17, but the Court finds them sufficiently distinguishable to the facts at issue here. *See Walker v. Farmers Ins. Co.*, 83 F.3d 349 (10th Cir. 1996) (holding the victim was not "occupying" vehicle when he had exited and was running down the street to flee shooter when he was shot "a considerable distance from his vehicle"); *United Fin. Cas. Co. v. Rasier, LLC*, No. 21-CV-412-GKF-JFJ, 2024 WL 1235595 (N.D. Okla. Feb. 29, 2024) (holding the victim was not "occupying" vehicle where he exited during a confrontation and was followed, struck, and killed after walking 180 feet away). Here, as NUFIC acknowledges, Holt clearly was not running away or intending to leave the vehicle for any prolonged period of time. And unlike the *Walker* and *Rasier* victims, Holt was actively interacting with and near the truck at the time of his injury and would have returned to the truck once the task was done.

Perhaps most compelling to the Court is the Eleventh Circuit's opinion in *Argonaut Great Cent. Ins. Co. v. Mitchell*, 482 F. App'x 477 (11th Cir. 2012). Although this opinion is not binding on this Court nor does it apply Oklahoma law, the Court finds the factual similarities and reasoning instructive. In *Argonaut*, the court analyzed an identical definition of "occupying" to that at issue here—"in, upon, getting in, on, out or off"—as it related to a sanitation worker who was injured while he was standing in close proximity to

the rear of the truck. *Id.* at 480. Central to both the district court's and Eleventh Circuit's

reasoning was the inherent function and purpose of the truck:

> The intended use of the sanitation truck was to collect garbage along the
> route. Argonaut knew it was insuring a sanitation truck. And Mitchell's use
> of that truck—including his repeatedly getting on and getting off of the
> truck—was an expected (indeed, required) use of that truck. As the district
> court observed, the term "occupying" as defined in the policy should be given
> a more expansive reading in the context of a sanitation truck than might
> otherwise apply in the context of a passenger car.
>
> . . .
>
> Taking into account the use of the insured vehicle, the causal connection
> between that use and the accident, Scott Mitchell's close proximity to the
> right rear platform of the truck, his position facing that platform when he was
> struck from behind, nothing remained to be completed in his approach to the
> truck, and his engagement in a transaction essential to the use of that vehicle,
> the court concludes that no reasonable jury considering these undisputed
> facts would find that Scott Mitchell was not 'occupying' the truck at the time
> he was fatally injured.

*Id.*

So too, here. The undisputed facts demonstrate that Holt was previously a passenger

in the truck, had interacted with the truck immediately prior to being struck, and was

actively walking in close proximity around the vehicle to stand in the "safe area" when he

was injured. The essential function of a garbage truck requires that employees get on and

off the truck in the course and scope of their duties. Thus, to adopt NUFIC's interpretation

of "occupying" would treat coverage like a light switch—flickering on and off dozens of

times per day as employees step on and off the truck. Such an interpretation defies common

sense and public policy. *Wickham*, 889 P.2d at 1261 ("We also find that a broad

interpretation of 'occupying' is consistent with the public policy underpinnings of the

uninsured motorist statute.").  Thus, the Court finds as a matter of law that the undisputed material facts support the conclusion that Holt was "occupying" the truck at the time of the accident.  Because Holt was occupying the truck, he was an "insured" under the Policy.

### 2.  *Transportation Mode*

NUFIC argues that Plaintiff is not entitled to UM coverage because Plaintiff's "use" of the truck did not have a "causal connection to the uninsured vehicles transportation mode."  Under Oklahoma law, Plaintiff "must show an injury that (1) was caused by an accident, (2) arose out of the use of the uninsured vehicle and (3) *had a causal connection to the uninsured vehicle's transportation mode.*" *Mayer v. State Farm Mut. Auto. Ins. Co.*, 944 P.2d 288, 291 (Okla. 1997) (emphasis original).  NUFIC appears to concede that the injury "arose out of the use" of the truck and instead challenges only whether the use was related to the transportation nature of the vehicle.  Def.'s Resp. [Doc. No. 73] at 22–23.

The "pertinent question for UM coverage is not whether a vehicle was being used for any intended function, but whether there was a causal connection between the accidental injury and 'the vehicle's *inherent function as a means of transportation.*'" *Bituminous Cas. Corp. v. Pollard*, 508 F. App'x 780, 790 (10th Cir. 2013) (quoting *Mayer*, 944 P.2d 288) (emphasis original).  "However, [the Oklahoma Supreme Court has] also said that UM-covered use is not limited to the driving-operation use of the uninsured motor vehicle."  *Ply*, 81 P.3d at 648.

While both parties devote much argument in their Motions to this issue, and both parties cite *Safeco*, the parties omit perhaps the most critical part of *Safeco* as it pertains to this issue: "whether a use of an uninsured motor vehicle is related to the transportation

nature of the vehicle *is necessarily a question of fact* to be determined in each case."

*Safeco*, 803 P.2d at 692–93 (emphasis added). But as the Tenth Circuit noted, the *Safeco*

court "nonetheless concluded, as a matter of law, that 'the acts of cutting the fuel line and

igniting the fuel after the car was parked, which caused the car to burn, are so contrary to

[the] transportation nature of the vehicle that . . . these events are not related to its

transportation nature.'" *Bituminous Cas. Corp. v. Pollard*, 508 F. App'x 780, 788 (10th

Cir. 2013) (quoting *Safeco*, 803 P.2d at 695).

However, there are other pertinent cases that present very different circumstances

than *Safeco* where courts have held that the issue of "transportation mode" is a fact question

for the jury. For example, in *Willard v. Kelley*, the Oklahoma Supreme Court reversed the

trial court's grant of summary judgment where the jury could draw conflicting inferences

from the facts regarding the causal connection between the use of the car and the shooting

that caused the injury. *Willard*, 803 P.2d 1124; *see also Byus v. Mid-Century Ins. Co.*, 912

P.2d 845, 847 (Okla. 1996) (holding the "trial court and the Court of Appeals incorrectly

determined summary judgment was proper" where "reasonable minds could draw different

inferences" from the undisputed material facts regarding whether the injury arose out of

use of the vehicle).

Here, the undisputed facts establish: (1) the truck's engine was on and it was in

neutral gear with the emergency brake on; (2) the PTO system was engaged and the truck

was rendered "immobile" at the time of the injury; and (3) Holt was engaged in a

transaction essential to the use of the vehicle, *i.e.* lifting a dumpster to collect garbage.

Having reviewed the cases and examples by both parties, the Court finds that reasonable jurists could draw conflicting inferences based on the undisputed material facts.

On one hand, it is obvious that the inherent function of a garbage truck necessitates a series of intermittent stops throughout its route as it picks up dumpsters. Brief stops that are critical to the overall purpose of the vehicle are arguably different than circumstances where a vehicle is stationary for extended periods of time and used for a different function (such as a platform on a workover rig). *See Pollard*, 508 F. App'x at 789. And as Plaintiff aptly points out, the "garbage truck's entire purpose is to *transport* trash from one location to another." Pl.'s Resp. [Doc. No. 80] at 27 (emphasis in original). Thus, a juror could reasonably conclude that the injury occurred when the garbage truck was "in use as a motor vehicle." *Mayer*, 944 P.2d at 291. On the other hand, NUFIC's point is well taken—the truck was immobile and was fulfilling its function of *collecting* garbage rather than *transporting* garbage at the time of the injury. Whether this is a distinction without a difference is a question for the jury to decide. *Riley v. Brown & Root, Inc.*, 896 F.2d 474, 476 (10th Cir. 1990) ("Where different ultimate inferences may properly be drawn, the case is not one for a summary judgment.").

### B. Bad Faith

Under Oklahoma law, an insurer has a duty to act in good faith and to deal fairly with the insured to ensure that the policy benefits are received, and a violation of that duty gives rise to a tort cause of action. *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977). To establish a prima facie case against an insurance company for a bad faith delay in payment, Plaintiff bears the burden of proving that: (1) Holt was entitled to

coverage under the policy at issue; (2) NUFIC had no reasonable basis for delaying payment; (3) NUFIC did not act fairly and in good faith with Holt; and (4) NUFIC's breach of its duty of good faith and fair dealing was the direct cause of Holt's injury. *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009). Courts begin the analysis by asking whether there is a legitimate dispute between the insurer and insured regarding coverage, and if there is, courts next look to whether the plaintiff offered specific additional evidence to demonstrate bad faith. *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019)

NUFIC moves for summary judgment as to Plaintiff's bad faith claim on the grounds that (1) Holt's UM claim was not covered; (2) there was a legitimate dispute about coverage and NUFIC reasonably relied on counsel's advice; and (3) Plaintiff has no additional evidence to demonstrate bad faith. Def.'s Mot. [Doc. No. 77] at 17–19. Given the Court's ruling on the breach of contract claim, the Court sets aside the first basis. Further, because the Court has already determined that reasonable minds could differ as to whether the injury arose out of use of the vehicle in transportation mode, the Court finds that there was a legitimate dispute as to coverage. *See Ball*, 221 P.3d at 724 (internal quotations and citation omitted) ("The critical question in a bad faith tort claim is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy."). The Court also finds that NUFIC reasonably relied on the coverage opinions provided by outside counsel which presented much of the same case law and arguments set forth by the parties in their briefing.

Thus, the key inquiry into Plaintiff's bad faith claim is whether there is specific additional evidence to demonstrate that NUFIC acted in bad faith. *See Shotts*, 943 F.3d at 1315. Plaintiff sets out three arguments: (1) NUFIC "hid" the existence of UM coverage from Holt, who Plaintiff contends was a first party insured; (2) NUFIC had a general duty to disclose the UM coverage to Holt and failed to do so; and (3) the two coverage opinions relied upon by NUFIC contained conflicting reasoning. Pl.'s Resp. [Doc. No 80] at 28–32.

As to the first argument, Plaintiff sets forth no evidence that NUFIC "hid" the existence of the Policy from Plaintiff. While NUFIC admits that the policy was not disclosed to Plaintiff, nothing in the record suggests that Plaintiff asked for the document and NUFIC refused or intentionally obfuscated its existence. Further, the Policy is in OPC's name. Plaintiff's assertion that Holt was a "first party insured" in 2018 because he "paid premiums" through his payments to OPC is simply not supported by the record, and Plaintiff sets forth no case law to support his position. *See* Pl.'s Resp. [Doc. No. 80] at 23–24.

As to the third argument, while the Court understands Plaintiff's reasoning, the Court ultimately disagrees that the coverage letters are in conflict. To Plaintiff's point, on one hand, it appears that liability coverage was disclaimed due to an exclusion that precludes coverage for injuries arising out of "use" of the auto—concluding that Holt was injured through use of the truck.[10] On the other hand, NUFIC then disclaims UM coverage

---

[10] NUFIC contends that Plaintiff attempts to "mislead" the Court in making this argument because the general coverage and "use of auto" exclusion (g) is in a separate policy not provided by NUFIC.

under the NUFIC Policy because the truck was not being "used" at the time of the injury. However, the coverage opinion in 2021 specifically focused on whether Holt was injured "by the transportation nature of the motor vehicle." [Doc. No. 77-3] at 1. In other words, the counsel narrowed his analysis to being beyond a general "use" and instead analyzed whether there was a *transportation use*. Further, the opinion goes on to say: "It is undisputed that the garbage truck function of the Vehicle is what dropped the dumpster on Plaintiff while the Vehicle was stationary." *Id.* Thus, counsel reasonably acknowledged in both opinions that the truck was in use at the time of the injury; the question was as to "transportation mode."

Plaintiff's second argument is a closer call. Plaintiff argues that "once NUFIC denied liability coverage, it had a duty under the law to advise Holt of other potentially applicable benefits under the policy." Pl.'s Resp. [Doc. No. 80] at 30. In essence, Plaintiff argues that an insurer has a duty to disclose to Class 2 insureds. In support, Plaintiff cites a single case: *Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1224 (10th Cir. 2001). However, the *Phillips* Court stated that an "insurer has a duty to promptly produce a policy *on request* to an injured employee with a colorable claim under the policy so that the employee may ascertain whether he is covered and what responsibilities he has under the contract." *Id.* at 1224. Plaintiff sets forth no evidence that he requested a policy that NUFIC refused to provide.

---

Def.'s Reply [Doc. No. 82] at 6. The Court disagrees. Plaintiff's argument is that the *reasoning* behind the two denials, on their face, appear to be contradictory despite being offered by the same outside counsel.

However, other jurisdictions have found that insurers owe a duty of disclosure to Class 2 insureds for UM coverage. *See e.g.*, *Salas v. Mountain States Mut. Cas. Co.*, 202 P.3d 801, 807 (N.M. 2009) ("Consistent with the principle of fundamental fairness, we conclude that the duty of disclosure is not limited to class-one insureds, but rather extends to all insureds who have sustained compensable injuries under the terms and conditions of the insurance policy and of whom the insurer has actual knowledge."). This outcome aligns with basic notions of fairness. Further, in discussing *Salas*, the Tenth Circuit has intimated that an insurer's failure to disclose may be a factor that suggests bad faith. *Soseeah v. Sentry Ins.*, 808 F.3d 800, 812 (10th Cir. 2015) ("[N]othing in *Salas* states that an insurer's failure to disclose, *standing alone*, gives rise to a bad faith claim.") (emphasis added).

Yet, while the Court may be skeptical of the fairness and best practices of an insurer's decision not to disclose its policies to those Class 2 insureds it has actual knowledge of, the Court finds that NUFIC's failure to disclose does not rise to the level of bad faith in this case. This is especially so given that Oklahoma law has not addressed whether an insurer has a duty to disclose coverage to a Class 2 insured, and the parties set forth no authority to suggest otherwise. *See Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105–06 (10th Cir. 2016) (Oklahoma law governs Plaintiff's bad faith claim where this Court's jurisdiction is predicated on diversity of citizenship).

Accordingly, NUFIC is entitled to judgment as a matter of law on Plaintiff's bad faith claim.[11]

---

[11] Given this ruling, NUFIC's arguments regarding punitive damages and general damages related to the bad faith claim are moot. *See* Def.'s Mot. [Doc. No. 77] at 31–35.

## V.    <u>**Conclusion**</u>

IT IS THEREFORE ORDERED that Plaintiff's Partial Motion for Summary Judgment [Doc. No. 68] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 77] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 8th day of August, 2025.


_____

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**